```
                                                      FILED
                                               U.S. DISTRICT COURT
                                              DISTRICT OF MARYLAND
        IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MARYLAND
                                                   MAR 19 2008

                                                  CLERK'S OFFICE
NATHANIEL TRADER,                                  AT BALTIMORE
        Petitioner,                         BY_____DEPUTY

v.                              Case No. CR B-93-0368

UNITED STATES OF AMERICA,
        Respondent.
_____/
```

**MOTION TO MODIFY TERM OF IMPRISONMENT
PURSUANT TO 18 U.S.C. § 3582(c)(2)**

Comes now Petitioner, Nathaniel Trader, Pro se (hereinafter Petitioner), pursuant to 18 U.S.C. § 3582(c)(2) and moves this Honorable Court for reduction of his 274 months prison term imposed February 10, 1995.

INTRODUCTION

On December 10, 2007, the United States Supreme Court ruled that judges can consider the unfairness of the 100-to-1 ratio between crack and powder cocaine sentences (validating the view of the United States Sentencing Commission to include the resulting disparity as the "single most important" factor in longer sentences for blacks compared to other racial groups) and may impose a sentence below the crack guideline to the Statute's mandatory minimum in cases where the guideline sentence is too severe. Kimbrough v. United States, 552 U.S. ___ (2007), Slip Op. at 21-23. And ON December 11, 2007, the United States Sentencing Commission expressly designated Amendment 706 as one that may be applied retroactively as amended by 711 effective March 3, 2008, and issued a revised version of Section 1B1.10, which emphasizes the nature

of relief available under § 3582(c). Petitioner request that this Court give retroactive effect to Amendment 706 under §1B1.10(c). U.S.S.G. §1B1.10(c) (Dec.11, 2007); United States v. McHan, 386 F.3d 620, 622 (4th Cir. 2004); U.S.S.G. App.C, Supp.Amend. 706 as amended by 711; 18 U.S.C. § 3582(c)(2).

In United States v. Legree, 205 F.3d 724 (4th Cir. 2000), the Fourth Circuit held that the general rule of Davis and Johnson applies to motions made pursuant to § 3582(c)(2). Legree, 205 F.3d at 728-29 ("[a] court need not engage in ritualistic incantation in order to establish its consideration of a legal issue. It is sufficient if ... the district court rules on issues that have been fully presented for determination. Consideration is implicit in the court's ultimate ruling." United States v. Davis, 53 F.3d 638, 642 (4th Cir. 1995) ...; see also United States v. Johnson, 138 F.3d 115,119 (4th Cir. 1998) ...). Id at 728. But unlike Legree's troubled history and sentencing factors (Criminal History Category III and two-point enhancement for firearms possession, Id. at 726), Petitioner is a first-time non-violent offender as set forth in the following.

## CASE REVIEW

Petitioner is a first-time non-violent offender whom was found guilty by a jury August 2, 1994, of Count One, Conspiracy to distribute and possess with intent to distribute a quantity of a mixture or substance containing a detectable amount of cocaine base, a Schedule II Controlled Substance, and Aiding & Abetting, in violation of 21 U.S.C. §846 and 18 U.S.C. §2. See P.S.I., ¶1; and Judgment.

At sentencing, the Court found "He doesn't have a prior criminal history" because "This is part of this case" (Sent.Trans., Pg.100(L.14-15)) and found drug quantity to be "in excess of one and a half kilos" (Pg.85(L.5)). The Court also found that Petitioner receive a two level increase under 3B1.1(c) (Pg.86(L.12-19)) instead of the four level increase recommended in the Presentence Report (¶11). Accordingly, on February 10, 1995, Petitioner was sentenced to a term of imprisonment of 274 months, after "credit for the time he has actually served on this related offense of 18 months" (Pg.100(L.16-21) was deducted from the low-end 292-365 Guideline range, at a Criminal History Category I, level 40. See Sent.Trans., Pp.101(L.10-13), 110(L.3-5).

In an effort to prove his innocence (Sent.Trans., Pg.105(L.19) - 108(L.15)), Petitioner filed Appeal and a § 2255 motion to no avail.

## GROUNDS FOR REDUCTION

A)  <u>18 U.S.C. § 3582(c)(2)</u>.

Section 3582(c)(2) stipulate:

> **(c) Modification of an imposed term of imprisonment.** The court may not modify a term of imprisonment once it has been imosed except that-
> (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

In <u>United States v. Legree</u>, 205 F.3d 724, 728 (4th Cir. 2000),

the Fourth Circuit stated that it disagreed with the need for or utility of the two-step method. However, the essence of its ruling was that the district court's proper consideration of the factors relevant to a Section 3582(c)(2) reduction of sentence, including consideration of Section 3553(a) factors, may be presumped from the record.

Two of the determinations a district court makes in deciding whether or not to modify a sentence under 18 U.S.C. § 3582(c)(2) are (1) the sentencing court considers what sentence it would have imposed had the retroactive amendment been in effect at the time the defendant was sentenced. The district court makes that determination leaving unaffected all other guideline application decisions. U.S.S.G. §1B1.10(b)(1) (Dec.11, 2007).

On November 1, 2007, the United States Sentencing Commission amended the Drug Quantity Table in §2D1.1 so that crack quantities triggering the five-and ten-year statutory mandatory minimums are assigned base offense levels two levels lower than before. These base offense levels now correspond to guideline ranges that include, "rather than exceed", the statutory mandatory minimums. The Commission similarly adjusted the drug threshold quantities above, between, and below the mandatory minimum thresholds, with the net result being that base offense levels across the broad are two levels lower for crack offenses than they would have been before the amendment. On December 11, 2007, the Commission voted unanimously to make the crack amendment retroactive effective March 3, 2008. See 72 Fed.Reg. 28, 558, 571-73; U.S.S.G. App.C, Supp.Amend. 706 as amended by 711; U.S.S.G. §2D1.1 (2007).

4

In the particular case, as stated in the "Case Review", Petitioner was sentenced on February 10, 1995, to a term of imprisonment of 274 months (Pg.110(L.3-5)), with a 18 month departure for time served, at the low-end Guideline range of level 40, Criminal History Category I, 292-365 months (Pg.100(L.14-15)). Accordingly, the Court would simple determine the same low-end Guideline range that would have applied had Amendment 706 been in effect at Petitioner's sentencing (235-292 months at level 38, as opposed to 292-365 months at level 40), minus the 18month departure for time served (235 - 18 = 217 months). U.S.S.G. §1B1.10(b)(2)(B) (Policy Statement) (promulgated Dec.11, 2007).

Having established the applicable Amendment's low-end Guideline range, the Court (2) considers the factors contained in 18 U.S.C. § 3553(a) and, in the exercise of its thus informed discretion, decide whether to reduce Petitioner's term of imprisonment. Legree, 205 F.3d at 728-29 (4th Cir. 2000); 18 U.S.C. § 3582(c)(2); U.S.S.G. §1B1.10, Reduction in Term of Imprisonment as a Result of Amended Guideline Range(Policy Statement) (Dec.11, 2007); U.S.S.G. App.C, Supp.Amend. 706 as amended by 711.

The Petitioner also submit to the Court ex-President Bill Clinton's "apology that deserves more than fleeting attention" for the disparity that has impacted Blacks mostly. See Atth.A.

B) 18 U.S.C. § 3553(a).

Section 3553(a) stipulate:

(a) Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider-

See 18 U.S.C. § 3553(a)(1)-(7), which are asserted below.

The United States Supreme Court's ruling in <u>Kimbrough</u>, Fourth Circuit's ruling in <u>Legree</u>, United States Sentencing Commission's Amendment 706 and policy statement §1B1.10, and Section 3582(c)(2), all warrant this Court's consideration of the factors set forth in § 3553(a) "in determining the particular sentence to be imposed" for the Petitioner. Asserted as presented in § 3553(a), Petitioner submits that-

(1) "the nature and circumstances of the offense" consist of Petitioner being found guilty by a jury of Conspiracy (P.S.I., ¶1), drug quantity in excess of 1.5 kilos being found by the Sentencing Court (Sent.Trans., Pg.85(L.5)) now in violation of <u>Booker</u> (see §1B1.10(b)(2)(B)), and Petitioner receiving a two level decrease from the recommended P.S.I. four level increase (Sent.Trans., Pg.86 (L.12-19); P.S.I., ¶11), which all was opposed (as previously set forth), "and the history and characteristics of the defendant" being a first-time non-violent offender (Sent.Trans., Pg.100(L.14-15)) whom has a heart murmur (P.S.I., ¶30; <u>Atth</u>.B, ¶G) at 57 years old (<u>Atth</u>.B, Pg.1) and operated T & T Trucking Company since 1984 (P.S.I. ¶32);

(2) "the need for the sentence imposed-

(A) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" has all been addressed by the U.S. Supreme Court and U.S. Sentencing Commission (as previously set forth; see also <u>Atth</u>.A);

(B) "to afford adequate deterrence to criminal conduct" which Petitioner was a first-time non-violent offender at age 41 (P.S.I.,

¶18) and has only received 1 minor incident report (Atth.B, ¶E) since his incarceration;

(C) "to protect the public from further crimes of the defendant" which it has already been established that Petitioner is not a risk by Petitioner's "Out Custody" Camp status set by the F.B.O.P. because of his conduct (see Atth.B); and

(D) "to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner" which Petitioner has taken advantage of, to include his work history at Unicor (Atth.B, ¶B-D);

(3) "the kinds of sentences available" which are the U.S. Sentencing Commission's Amendment 706 guideline reduction to the low-end Guideline range of 235-292, minus 18 month departure for time served to 217 months (as previously set forth). The Court also can now apply the application of Booker pursuant to the Commission's §1B1.10(b)(2)(B) policy statement (promulgated Dec.11, 2007) to grant Petitioner immediate release (as set forth previously in § 3553(a)"(1)"; see also §994(u);

(4) "the kinds of sentence and the sentencing range established for-

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced" which now would be level 38, Criminal History Category I, low-end 235-292 guideline range minus 18 months time served to 217 months (as previously set forth), or a sentence pursuant to

§1B1.10(b)(2)(B)'s Booker application because drug quantity was not found by Petitioner's jury (also previously set forth); or

    (B) N/A;

(5) "any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced" of which section 994(a)(2), in pertinent part, stipulate:

> (a) The Commission ... shall promulgate and distribute to all courts of the United States ...-
>   (2) general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes set forth in section 3553(a)(2) of title 18, United States Code, including the appropriate use of-
>     (C) the sentence modification provisions set forth in sections ... 3582(c) of title 18;

28 U.S.C. §994(a)(2). And policy statement §1B1.10(b)(2)(B), in pertinent part, stipulate:

> (b) <u>Determination of Reduction in Term of Imprisonment.</u>- ...
>   (2) <u>Limitation and Prohibition on Extent of Reduction.</u>- ...
>     (B) <u>Exception.</u>- ... However, if the original term of imprisonment constituted a non-guideline sentence determined pursuant to 18 U.S.C. § 3553(a) and <u>United States v. Booker</u>, 543 U.S. 220 (2005), **a further reduction** generally would not be appropriate.

U.S.S.G. §1B1.10(b)(2)(B) (Policy Statement) (Dec.11, 2007). Petitioner's "original term of imprisonment constituted a [Statutory mandatory minimum] sentence determined pursuant to 18 U.S.C. § 3553(a) and <u>United States v. Booker</u>," because drug quantity was not found by Petitioner's jury (as previously set forth) and "**a further reduction**" than immediate release because of time served "generally would not be appropriate";

(6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of

similar conduct" has already been considered by the U.S. Supreme Court and U.S. Sentencing Commission, and is the reason Petitioner presents this motion before the Court (set forth previously); and

(7) "the need to provide restitution to any victims of the offense" of which there are none (P.S.I., ¶12).

## CONCLUSION

THEREFORE, based on the foregoing and in the interest of justice, Petitioner respectfully pray that this Honorable Court grant his Motion to Modify Term of Imprisonment pursuant to 18 U.S.C. § 3582(c)(2) and reduce his term of imprisonment to the lowest term decided.

Respectfully submitted,

Dated on March 14, 2008.

Nathaniel Trader, Pro se
Reg.No. 29601-037
F.C.I. Fort Dix
P.O. Box 2000 (Camp)
Fort Dix, N.J. 08640

# Bill Clinton admits 'regret' on crack cocaine sentencing

By DeWayne Wickham

PHILADELPHIA — It was an expression of regret that didn't seem to register with the knot of journalists who came to cover the event — an apology that deserves more than fleeting attention.

In a keynote address last week at a University of Pennsylvania symposium commemorating the 40th anniversary of the Kerner Commission report on the causes of racial disturbances in the 1960s, Bill Clinton did what many politicians find hard to do: admit he made a big mistake.

"I regret more than I can say that we didn't do more on it," he said about his administration's failure to end the disparate sentencing for people convicted of crack and powder cocaine offenses. "I'm prepared to spend a significant portion of whatever life I've got left on the earth trying to fix this because I think it's a cancer," the former president said of the devastating impact this sentencing imbalance has had on blacks.

And, indeed, it is a cancer. Since they were first enacted in 1986, the federal sentencing guidelines have mandated the same prison terms for people convicted of selling 5 grams of crack cocaine as someone found guilty of selling 500 grams of powered cocaine.


**Clinton:** At race symposium last week.
By Matt Rourke, AP

### Blacks impacted most

This disparate treatment of cocaine offenders has had a stark racial element to it since blacks are disproportionately more likely to be incarcerated for selling crack cocaine than whites and Hispanics who are more likely to be convicted of selling powered cocaine.

In 1995, when the U.S. Sentencing Commission first recommended eliminating the 100-to-1 sentencing disparity, President Clinton opposed that change. Two years later, during a White House meeting with members of The Trotter Group, an organization of black columnists, Clinton said he would support a reduction in sentencing ratio.

The following month, his administration urged Congress to narrow the crack-to-powder sentencing disparity down to 10-to-1. But federal lawmakers refused to do so, an inaction that has left black drug offenders to linger behind bars — serving nearly as much time in federal prisons as whites who were incarcerated for violent crimes.

### Congressional inaction

Last year, the Sentencing Commission issued guidelines that will give judges the power to order a small reduction in the sentences of people imprisoned for selling crack cocaine. But Congress has shown little inclination to wipe out the sentencing guidelines.

When I asked Clinton during an onstage interview after his speech whether he regretted not eliminating the sentencing disparity, he said that while it was "politically impossible" to get the reduction he sought through Congress, he now believes the 1986 guidelines were a mistake that have taken a heavy toll on blacks.

"We sentenced with a shotgun instead of a rifle," he said of the congressional act.

In addition to calling on Congress to end this disparity, Clinton said there also needs to be "an aggressive effort to pass federal legislation to restore voting rights to people as soon as they get out of jail." Blacks, who are just 13% of the nation's population, were 41.6% of state and federal prisoners in 2006 and as a result far more likely to be hurt by state laws that deny convicted felons the right to vote.

While this was not the first time Clinton called for an elimination of the crack-to-powder sentencing disparity — he did so in a November 2000 *Rolling Stone* interview — it's the first time he has done it so unequivocally and forcefully.

Of course, it's a good bet that what Clinton said last week won't sit well with many critics, who will say this is too little, too late. But I don't think his apology — or his pledge to help repair the damage done by the sentencing disparity — should be summarily dismissed.

Of this nation's 43 presidents, Bill Clinton is one of a handful who has forged a meaningful bond with blacks. And I think the apology he offered last week is proof of his desire to maintain this friendship.

*DeWayne Wickham writes on Tuesdays for USA TODAY.*

```
FTD2Q                *       PROGRESS REPORT              *    07-07-2007
PAGE                                                           09:23:35

RSP OF: FTD FORT DIX FCI              US DEPARTMENT OF JUSTICE BUREAU OF PRISONS
        5756 HARTFORD & POINTVILE RD
        FORT DIX, NJ 08640
        609 723-1100
NAME: TRADER, NATHANIEL               REGNO: 29601-037 AGE (DOB): 57/12-07-1949
```

| INMATE REVIEWED/SIGNATURE | DATE | STAFF SIGNATURE |
|---|---|---|
| [signature] | 7/20/07 | [signature] |

TYPE OF PROGRESS REPORT:
INITIAL ___ SIH _x_ TRIENNIAL ___ PRE-RELEASE ___ TRANSFER ___ OTHER: ___

PRESENT SECURITY/CUSTODY LEVEL:
  MINIMUM   /OUT

OFFENSE/VIOLATOR OFFENSE:
SENTENCE IMPOSED AND TERM OF SUPERVISION:

21:846 & 18:2, CONSPIRACY TO DISTRIBUTE AND POSSESS WITH
INTENT TO DISTRIBUTE A QUANTITY OF A MIXTURE OR SUBSTANCE
CONTAINING A DETECTIBLE AMOUNT OF COCAINE BASE, A SCHEDULE II
CONTROLLED SUBSTANCE; AIDING AND ABETTING
  274 MONTHS                              /    5 YEARS

DATE COMPUTATION BEGAN: 02-10-1995

| DAYS FSGT/WSGT/DGCT: | DAYS GCT OR EGT/SGT: | MONTHS SERVED: + JAIL CREDIT - INOP TIME |
|---|---|---|
| 0   /0   /0 | 648 | M:    148 D: 28 <br> + 198    JC - 0    INOP |

PROJECTED RELEASE DATE: 06-16-2014  | PROJECTED RELEASE METHOD: GCT REL

DETAINERS/PENDING CHARGES:
NONE ON FILE

CO-DEFENDANTS: NONE

DISTRIBUTION: ORIGINAL TO INMATE, COPY TO USPO, COPY TO USPC
              CENTRAL FILE - SECTION TWO                              BP-CLASS-3

```
NAME: TRADER, NATHANIEL              REGNO: 29601-037
------------------------- INSTITUTIONAL ADJUSTMENT --------------------------
Inmate Trader was designated to SCP Fort Dix on 03-21-2000. He has participated in
recommended programming and has received good work reports. He is not considered a
management problem.


A.   PROGRAM PLAN: At his initial classification and at subsequent program reviews,
the Unit team recommended participation in the FRP Program, ACE Courses, maintaining
good work reports and good sanitation within the unit.

B.   WORK ASSIGNMENTS: He has been assigned to the following work details:

INST    WORK ASSIGNMENT                          START DATE      STOP DATE

FTD     FPI MBR-8   FPI                          07-27-2006      CURRENT
FTD     6695 ORD C  BLDG 6695 ORDERLY - FTD CAMP 07-13-2006      07-27-2006
FTD     SHU UNASSG  UNASSIGNED - SHU             07-08-2006      07-13-2006
FTD     FPI DEMAN2  FPI DEMANUFACTURING 5735     09-06-2005      07-08-2006
FTD     FPI DEMAN1  FPI DEMANUFACTURING 5713     07-25-2005      09-06-2005
FTD     FPI DEMAN2  FPI DEMANUFACTURING 5735     07-05-2005      07-25-2005
FTD     FPI DEMAN1  FPI DEMANUFACTURING 5713     11-04-2004      07-05-2005
FTD     VACATION E  VACATION - FCI EAST          10-18-2004      11-04-2004

C.   EDUCATIONAL/VOCATIONAL PARTICIPATION: Inmate Trader has participated in the
following course during his period of incarceration.

--------------------------- EDUCATION INFORMATION ---------------------------
FACL ASSIGNMENT DESCRIPTION                 START DATE/TIME STOP DATE/TIME
FTD  ESL HAS    ENGLISH PROFICIENT          03-16-1995 1405 CURRENT
FTD  GED HAS    COMPLETED GED OR HS DIPLOMA 03-29-1995 1639 CURRENT

--------------------------- EDUCATION COURSES -----------------------------
SUB-FACL   DESCRIPTION                    START DATE STOP DATE  EVNT AC LV  HRS
FTD SCP    OFFICIALS TRNG CERTIFICATION   06-01-2006 09-11-2006  P   C  P   119


D.   COUNSELING PROGRAMS: Inmate Trader participates in informal counseling sessions
with his case manager and counselor on an as needed basis.

E.   INCIDENT REPORTS: (SENTRY WILL CAPTURE INCIDENT REPORTS. FOR PROHIBITED
ACTS OF GREATEST SEVERITY, INCLUDE A BRIEF ACCOUNT OF THE INCIDENT.)

---------------------------------------------------------------------------
UDC HEARING DATE/TIME: 07-10-2006 1400     INCIDENT DATE/TIME: 07-08-2006 1000
   312   BEING INSOLENT TO STAFF MEMBER - FREQ: 1
         LP COMM    / 120 DAYS / CS / SUSPENDED 180 DAYS
           COMP:     LAW:     INMATE WILL LOSE 120 DAYS OF COMMISSARY (SUSPENDED
                              PENDIND 180 DAYS CLEAR CONDUCT.
         LP PHONE   / 90 DAYS / CS
           COMP:     LAW:     INMATE WILL LOSE 90 DAYS TELEPHONE 07-11-2006
                              10-11-2006
         LP VISIT   / 90 DAYS / CS
           COMP:     LAW:     INMATE WILL LOSE 90 DAYS VISITING 07-11-06 UNTIL
                              10-11-2006
```

NAME: TRADER, NATHANIEL                REGNO: 29601-037

F. INSTITUTIONAL MOVEMENT: Inmate Trader has participated in several escorted trips to the local hospitals. There hasn't been any other institutional movement.

G. PHYSICAL AND MENTAL HEALTH: Inmate Trader is assigned regular duty with medical restrictions. He is not cleared for food service. He hasn't had any emotional or mental disorders. He should be considered fully employable upon release from custody.

H. PROGRESS ON FINANCIAL RESPONSIBILITY PLAN: At the time of sentencing, the District of Maryland imposed a $50 Felony Assessment. He is also subjected to pay $21,352 COIF Fee. He is currently making $50% of Unicor Payments in the FRP Program.

```
FRP ASSIGNMENT                              START DATE
PART              FINANC RESP-PARTICIPATES  04-17-2000
```

I. RELEASE PREPARATION PROGRAM & RELEASE PLANS: Inmate Trader will complete the Institutional Release Preparation Program and Unit Release Preparation Programs prior to his release. These particular programs will provide him with information on health and nutrition, employment, personal finance, community resources, release requirements and procedures, and personal growth and development.

```
CMA ASSIGNMENT (REL PREP)                   START DATE
RPP NEEDS         RELEASE PREP PGM NEEDS    09-05-1996
```

PRE-RELEASE PREP DATE: 12-16-2013

RESIDENCE:     To be secured.

EMPLOYMENT:    To be secured.

USPO:          Mr. Richard A. Houck, Jr., CUSPO
               US District Court
               2800 E. Barrett Prettyman U.S. Courthouse
               333 Constitution Ave., N.W.
               Washington, DC 20001-2802

J. RELEASE NOTIFICATIONS:

OFFENDER IS SUBJECT TO RELEASE NOTIFICATION PROVISIONS UNDER 18 USC 4042(B) DUE TO:
    CURRENT CONVICTION FOR A DRUG TRAFFICKING OFFENSE

    18 USC 4042(B) NOTIFICATIONS APPLY TO INMATES RELEASING TO THE COMMUNITY WITH SUPERVISION

IS OFFENDER SUBJECT TO RELEASE NOTIFICATION PROVISIONS UNDER 18 USC 4042(C) DUE TO A CONVICTION FOR CERTAIN SEXUAL OFFENSES.

    ( ) YES   ( ) NO

    18 USC 4042(C) NOTIFICATIONS APPLY TO INMATES RELEASING TO THE COMMUNITY

DNA TEST STATUS: NEED
    DNA TESTING APPLIES TO INMATES WITH A QUALIFYING OFFENSE

NAME:   TRADER, NATHANIEL             REGNO:  29601-037

DICTATED BY: _____  CASE MANAGER (DATE)  7/6/07
             6695 M-Z    R. GILYARD, X-533

DATE TYPED:  07-07-2007

REVIEWED BY: _____  UNIT MANAGER (DATE)  7/6/07
             CAMP       A. LEWIS, CAMP UM X-532

**CERTIFICATE OF SERVICE**

I, Nathaniel Trader, certify that this document, Motion to Modify Term of Imprisonment pursuant to 18 U.S.C. § 3582(c)(2), was handed to a F.C.I. Fort Dix Officer to be mailed First Class Postage, prepaid, on March 14, 2008, and forwarded to:

    Christine Manuelian, A.U.S.A.
    101 West Lombard Street
    Baltimore, Maryland 21201

pursuant to Houston v. Lack, 487 U.S. 266, 270 (1988).

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed on March 14, 2008.          _/s/ Nathaniel Trader_
                                               Signature

End